# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: July 30, 2026

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | |
| SUZELLE BLANCHARD, | * | |
| | * | |
| | * | |
| Petitioner, | * | No. 24-1486 |
| | * | |
| v. | * | Special Master Nora Beth Dorsey |
| | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | Table Claim; Influenza ("Flu") Vaccine; Shoulder Injury Related to Vaccine Administration ("SIRVA"). |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * | | |

Laura Levenberg, Muller Brazil, PA, Dresher, PA, for Petitioner.
Lauren Kells, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT & CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

On September 23, 2024, Suzelle Blanchard ("Petitioner") filed a petition for compensation in the National Vaccine Injury Program, 42 U.S.C. § 300aa-10 et seq. (2018).[2] Petitioner alleged she suffered a left shoulder injury related to vaccine administration ("SIRVA") Table Injury as the result of an influenza ("flu") vaccination administered on February 1, 2023. Petition at Preamble (ECF No. 1). Respondent argued against compensation, stating that "this

---

[1] Because this Ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018) ("Vaccine Act" or "the Act"). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

case is not appropriate for compensation under the terms of the [Vaccine] Act." Respondent's Report ("Resp. Rept.") at 1 (ECF No. 14).

After carefully analyzing and weighing the evidence presented in this case in accordance with the applicable legal standards,[3] the undersigned finds that Petitioner does not satisfy all of the Table SIRVA criteria. See 42 C.F.R. § 100.3(c)(10). Accordingly, Petitioner's Table claim must be dismissed. Petitioner may file an amended petition and proceed with a causation-in-fact claim.

## I. BACKGROUND

### A. Procedural History

On September 23, 2024, Petitioner filed her petition followed by supporting medical records and her declaration. Petition; Petitioner's Exhibits ("Pet. Exs") 1-16. The case was assigned to the special processing unit ("SPU"). Activation and Reassignment Order dated Dec. 9, 2025 (ECF No. 10).

On May 9, 2025, Respondent filed his Rule 4(c) report. Petitioner was directed to file a Motion for a Ruling on the Record responding to the issues raised in Respondent's Rule 4(c) report. Non-PDF Order dated Mar. 11, 2025.

On July 23, 2025, Petitioner filed a motion for a ruling on the record on her SIRVA Table claim. Pet. Motion for a Ruling on the Record ("Pet. Mot."), filed July 23, 2025 (ECF No. 16). Respondent filed a response on September 8, 2025, and, on September 17, 2025, Petitioner filed a reply. Resp. Response to Pet. Mot. ("Resp. Response"), filed Sept. 8, 2025 (ECF No. 17); Pet. Reply to Resp. Response, filed Sept. 17, 2025 (ECF No. 18).

On June 12, 2026, the case was reassigned to the undersigned. After reviewing the medical records and the parties' ruling on the record briefing, the undersigned held a status conference. See Minute Entry dated July 16, 2026. She informed the parties that Petitioner could not sustain a Table claim and informed the parties she would issue a ruling dismissing the Table claim for the below discussed reasons.

[3] While the undersigned has reviewed all the information filed in this case, only those filings and records that are most relevant will be discussed. See Moriarty v. Sec'y of Health & Hum. Servs., 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision."); see also Paterek v. Sec'y of Health & Hum. Servs., 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

**B. Relevant Medical History**[4]

Petitioner's medical history includes arthritis, a temporomandibular joint dislocation, and left wrist pain secondary to de Quervain's tenosynovitis. See Pet. Ex. 3 at 4-10; Pet. Ex. 6 at 5; Pet. Ex. 8 at 76.

On February 1, 2023, Petitioner received a flu vaccine in her left deltoid[5] administered by pharmacy technician Sarah Levine, at HEB Pharmacy in Houston, Texas. Pet. Ex. 1 at 4 (vaccine administration record ("VAR")).

An image of an email from Petitioner to HEB pharmacy, dated February 26, 2023 (twenty-five days post-vaccination), stated that Petitioner had "immediate pain" in her right shoulder following her February 1, 2023 vaccination. See Pet. Ex. 4 at 1 (image of Gmail email from Suzelle Blanchard to s5515m@HEB.com); Petition at ¶ 3. Petitioner stated that the pharmacy technician injected the vaccination "three inches above the area [the technician] prepped." Pet. Ex. 4 at 1. She further stated that "[w]ithin [two] hours" of vaccination, [she] could not lift her arm, and she was "experiencing [f]rozen [s]houlder [s]yndrome." Id.

On February 27, 2023, Petitioner presented to chiropractor Kee Hyun Lee, D.C., at My Health Clinic with a complaint of right shoulder pain radiating to her upper arm. Pet. Ex. 5 at 2. Petitioner reported that her symptoms "occurred right after [a] flu vaccine" on February 1, 2023. Id. She described her pain as aching, burning, and sharp, and rated it as 10/10. Id. A musculoskeletal examination revealed range of motion ("ROM") deficits in Petitioner's right shoulder flexion, extension, abduction, internal rotation, and external rotation. Id. at 4. Treatment included an ultrasound, chiropractic manipulative treatment, and electrical muscle stimulation ("EMS). Id. at 6. The diagnoses included a right shoulder rotator cuff strain, muscle spasm of the back, and thoracic dysfunction. Id. The plan was for Petitioner to complete six-to-twelve visits over a two-to-four-week period. Id.

On February 28, 2023, Petitioner presented to Sarah Abdellatif, D.O., at Houston Methodist Orthopedics & Sports Medicine, for an evaluation of her right shoulder. Pet. Ex. 6 at 5. An x-ray revealed arthritis of Petitioner's right glenohumeral and acromioclavicular ("AC") joint. Id. at 7. Dr. Abdellatif diagnosed Petitioner with subacromial bursitis and rotator cuff arthropathy, prescribed a Medrol Dosepak and meloxicam, and provided a referral for physical therapy ("PT"). Id. at 7-8.

Petitioner had an initial PT evaluation on March 6, 2023, with Rebecca Clarke, P.T., at Select Physical Therapy. Pet. Ex. 7 at 29. Petitioner continued to demonstrate ROM deficits, and Ms. Clarke recommended that Petitioner attend PT once a week for six weeks. Id. at 30-31.

---

[4] This medical history is largely taken from Respondent's Rule 4(c) report as the undersigned finds the Rule 4(c) report provided an accurate representation of the records. See Resp. Rept. at 2-9. The undersigned has made edits and included only the most relevant medical history.

[5] Petitioner asserts that she received the flu vaccination in her right deltoid. Petition ¶¶ 1, 3; Pet. Ex. 15 ¶¶ 2-3 (Declaration of Suzelle Blanchard, dated September 17, 2024).

Petitioner completed two additional PT visits on March 14 and March 20, 2023, before deciding to discontinue PT in favor of acupuncture. Id. at 36-41.

On July 22, 2023, Petitioner presented to Houston Methodist West Hospital Emergency Department ("ED") for headache and right shoulder pain. Pet. Ex. 8 at 75. Petitioner reported a twelve-day history of "sharp shocks to the back of the right side of her head along with pressure behind her right eye," as well as shoulder pain from her February 1, 2023 vaccination. Id. Petitioner stated "ever since [her February 1 vaccine] her health has been going downhill." Id. Petitioner reported having had intermittent headaches since her vaccination, and right-sided facial pain. Id. She reported taking Advil, cannabidiol ("CBD") balm, and a "high dose" of oral CBD, for her shoulder and body aches, and that she had discontinued her meloxicam because it made her feel "heavy." Id. Petitioner's head computed tomography ("CT") revealed no significant abnormalities. Id. at 83. Petitioner received prescriptions for diclofenac gel and methocarbamol before being discharged later the same day. Id. at 81, 84.

Six months after vaccination, on August 2, 2023, Petitioner saw Maria Viviana Perez, N.P., at the Christ Clinic for right eye pressure, headache, and right shoulder pain. Pet. Ex. 9 at 16. Petitioner's examination showed limited ROM, "irregular gait," and tenderness in the right shoulder and both hips. Id. at 17. The diagnoses included right shoulder pain, multiple joint pain, anxiety, and depression. Id. NP Perez also ordered a right shoulder magnetic resonance imaging ("MRI") and prescribed a Medrol Dosepak, oral diclofenac sodium, and omeprazole. Id. at 16-17.

Petitioner's August 3, 2023 right shoulder MRI, without contrast, revealed tendinosis of the distal supraspinatus tendon, a 25% partial thickness articular surface tear of the distal supraspinatus tendon, subacromial/subdeltoid bursitis, and hypertrophy of the AC joint. Pet. Ex. 9 at 19.

On August 14, 2023, Petitioner had an initial consult with rheumatologist Dona Poulose, M.D., at Houston Methodist Rheumatology Associates, for "[i]nflammation all over." Pet. Ex. 16 at 44. Petitioner reported ongoing pain in her right shoulder, groin, hips, and knees, as well as "not being able to walk" since July 5. Id. She also stated that she had discontinued both the diclofenac gel and methocarbamol. Id. Dr. Poulose reviewed Petitioner's laboratory results from her July 22, 2023 ED visit and noted "elevated inflammatory markers," alongside an antinuclear antibody ("ANA") titer of 1:320, with a "c pattern." Id. at 49. He noted a family history of autoimmune disease. Id. Dr. Poulose diagnosed Petitioner with polyarthralgia and ordered a complete laboratory workup to assess Petitioner for autoimmune disease. Id.

Bloodwork done on August 14, 2023 showed elevated erythrocyte sedimentation rate ("ESR") and C-reactive protein ("CRP"). Pet. Ex. 16 at 17.

On August 23, 2023, Petitioner had a right knee x-ray which showed "[n]o adenopathy of the right knee." Pet. Ex. 9 at 18. And, on September 20, 2023, Dr. Poulose called in a prescription for a six-week course of prednisone. Pet. Ex. 16 at 33.

Petitioner next saw Dr. Poulose on September 26, 2023. Pet. Ex. 16 at 12. The history of present illness again noted a "past medical history of . . . shoulders, knees and hip pain." Id. She reported ongoing right shoulder pain since her February 2023 vaccination. Id. Petitioner also reported continued pain in her right shoulder, knees, and hips. Id. at 12, 19. She also stated that "it took three weeks on the prednisone before her pain started improving," which Dr. Poulose noted as "unusual for inflammatory arthritis and [polymyalgia rheumatica ("PMR")]." Id. at 12. Additionally, her pain "came back after prednisone was tapered." Id. Dr. Poulose again stated that Petitioner's blood work results revealed "elevated inflammatory markers," as well as an ANA titer of 1:320 with a "c pattern" and noted that her "[r]emaining serologies [were within normal limits]." Id. at 19. Dr. Poulose's diagnosis remained polyarthralgia. Id. Dr. Poulose ordered hip x-rays and additional labs, prescribed methotrexate[6] and folic acid, and advised Petitioner to return in two weeks. Id. at 20.

On October 30, 2023, Petitioner presented to primary care provider ("PCP") Punita Singh, M.D., at LE Family Practice, seeking rheumatology and orthopedics referrals. Pet. Ex. 11 at 166-68. Petitioner reported continued joint pain, especially of her right shoulder, hips, and knees. Id. at 167. Petitioner reported that she received a flu shot and "since then her right shoulder hurt." Id. "Shortly after the shoulder pain[,] she started having pain in both shoulders, groin, hips, [and] knees." Id. Petitioner reported she saw a rheumatologist for her joint pain and was prescribed methotrexate which she declined to take as she felt it was a "toxic drug." Id. Instead, Petitioner was managing her condition with over-the-counter medication. Id. On examination, Petitioner's right shoulder was tender with decreased range of motion. Id. at 170. Dr. Singh's assessment was "polyarthralgia (primary)", chronic right shoulder pain, and bursitis of the right shoulder. Id. at 166, 172. Referrals were placed for rheumatology and orthopedics. Id. at 172-73.

The same day, Petitioner also had a PT evaluation for polyarthralgia and chronic right shoulder pain with Destiny Thompson, D.P.T., at FP Physical Therapy. Pet. Ex. 12 at 113. Petitioner reported she had right upper extremity pain following a vaccine; however, her shoulder pain was now bilateral. Id. at 114. She reported her other joint pain was improving "due to taking 14 weeks of steroids." Id. Pain assessment from the visit noted 5-6/10 pain in her knees, hips, and shoulders bilaterally. Id. at 115. Petitioner described the pain as "achy." Id. Dr. Thompson recommended that Petitioner attend PT once a week for ten weeks. Id. at 118. On December 4, 2023, Petitioner had an additional PT session with Dr. Thompson. Id. at 94.

On December 11, 2023, Petitioner returned to Dr. Singh for continued treatment of her right shoulder pain, bursitis, and a bilateral shin rash. Pet. Ex. 11 at 126. Petitioner reported her arthralgia was a "little better since she changed her diet" and that her right shoulder pain was "better." Id. Petitioner also reported a mass on her left hip. Id. An examination revealed "small non-tender rubbery tissue ? Lipoma" on the lateral aspect of the left hip. Id. at 128. Dr. Singh

---

[6] Methotrexate is a "a folic acid antagonist that acts by inhibiting synthesis of DNA, RNA, thymidylate, and protein . . . . [that is] used as an antipsoriatic and antiarthritic in the treatment of severe, recalcitrant, disabling psoriasis and severe rheumatoid and psoriatic arthritis." Methotrexate, Dorland's Med. Dictionary Online, https://www.dorlandsonline.com/dorland/definition?id=30930 (last visited July 29, 2026).

diagnosed a "soft tissue mass" and ordered an ultrasound. Id. at 129. Dr. Singh denied Petitioner's request for an orthopedic referral due to insufficient PT and advised Petitioner to continue PT. Id. at 126. Diagnosis remained polyarthralgia, chronic right shoulder pain, and bursitis of the right shoulder. Id. at 129.

During a December 13, 2023 PT visit, Petitioner reported "feeling much better since she changed her diet," and she exhibited improved right shoulder range of motion. Pet. Ex. 12 at 77, 80.

Petitioner's December 14, 2023 lab work revealed a negative ANA test, normal CRP, and normal rheumatoid factor. Pet Ex 11 at 98-100.

On December 15, 2023, Petitioner had a new patient consultation with rheumatologist Winston Suh, M.D., at Rheumatology Clinic SC. Pet. Ex. 14 at 196. Petitioner presented "for evaluation of chronic polyarthralgias and elevated ESR/CRP." Id. at 200. The history of present illness noted:

> [Petitioner] states she [had] a flu shot in [February 1, 2023] to the [right] shoulder (accidentally injected the bursa that caused a severe inflammatory reaction, went to orthopedics that same month and was given steroids, meloxicam, PT). [July 5, 2023,] she states waking up, and "out of the blue, couldn't walk" (hips, groins, knees were very stiff/painful). This got progressively worse along [with] "lightning strike" headaches to the [right] side of the head. Went to the ER at Methodist and was given muscle relaxers and meloxicam. From there, she [was] tested for high inflammatory labs and was referred to rheum[atology]. At Methodist, a rheumatologist put her on prednisone taper beginning at 20mg for 14 weeks [with] minimal relief. She was also started on [methotrexate], but she didn't take it due to concerns about the toxicity. She then went back to taking 15mg meloxicam in addition to tylenol 1g [one to three times a day] for the past month. [Two] weeks ago, she began intermittent fasting and a keto diet and her "inflammation has dramatically improved." Also went to chiropractor who performed psoas release which really helped her hip pain.

Id. at 196. Petitioner was also concerned about the rash on her shins that started after her course of prednisone. Id. Dr. Suh opined that her rash was likely a result of steroids and non-steroidal anti-inflammatory drugs ("NSAIDs") but also noted a possibility of urticarial vasculitis. Id. at 200.

On examination, Petitioner had "stiffness/pain." Pet. Ex 14 at 199. The musculoskeletal examination showed "slight tenderness" bilaterally in her shoulders. Id. She had full range of motion bilaterally and her strength was intact. Id. Dr. Suh noted her examination was "primarily remarkable for a petechial rash." Id. at 200. Dr. Suh provided a differential diagnosis of osteoarthritis, reactive arthritis, polymyositis, fibromyalgia, PMR, and vasculitis. Id. Dr. Suh opined that Petitioner's "joint pain ha[d] mostly responded to a multi modality regimen including NSAIDs, steroids, and PT/[chiropractic treatment]," noting that Petitioner's "ESR/CRP ha[d] returned to normal at this point." Id. He declined to initiate any additional treatment modalities

"given [Petitioner's] improvement on conservative measures alone and stable presentation." Id. The plan was to obtain further diagnostic workup. Id.

During Petitioner's December 18, 2023 PT session, she reported the mass on her left hip and exhibited increased ROM in her right shoulder. Pet. Ex. 12 at 57.

On December 21, 2023, Petitioner followed up with her PCP, Dr. Singh. Pet. Ex. 11 at 65. She continued to complain of bilateral knee pain and reported that her right knee was swollen on the day of the appointment. Id. An ultrasound showed that the soft tissue mass on Petitioner's left hip "may represent a lipoma." Id. at 72. The same day, Petitioner spoke to her rheumatologist's office and received referrals to dermatology and nephrology. Pet. Ex. 14 at 176-77.

On December 27, 2023, Petitioner had an evaluation with Kiran Virani, FNP-C, at Vanguard Spine & Sport ("Vanguard") for pain in her neck, low back, and right shoulder, as well as both knees and hips. Pet. Ex. 13 at 2. Petitioner stated that her pain interfered with climbing stairs, sitting, and standing for long periods of time. Id. at 5. NP Virani applied chiropractic manipulation, ordered x-rays of the entire spine, and advised Petitioner to follow up in one to two days. Id. The differential diagnosis included spondylosis, spondylolisthesis, arthrosis, disc disorder/displacement, disc degeneration, sprain/strain, muscle spasm of back, radiculopathy, and spinal stenosis. Id.

The next day, December 28, 2023, Petitioner returned to a chiropractic provider at Vanguard to discuss her spinal x-rays from the prior day. Pet. Ex. 13 at 7. The cervical spine x-rays revealed moderate spondylosis and disc space narrowing at the C5 and C6 vertebrae. Id. at 164. The lumbar spine x-ray showed facet arthrosis at L5. Id. at 162. The thoracic spine x-ray was unremarkable. Id. at 163. The same day, Petitioner completed a PT session at Vanguard and received a lumbar back brace. Id. at 13.

Between January 2, 2024, and March 27, 2024, Petitioner completed thirty-four sessions at Vanguard for PT and chiropractic manipulation of the spine. Pet. Ex. 13 at 13-155. During this period, Petitioner demonstrated slow improvement in her spinal strength and range of motion, and generally rated her right shoulder pain between 2-4/10. See generally id. On January 8, 2024, Petitioner returned to Dr. Thompson at FP Physical Therapy for right shoulder pain. Pet. Ex. 12 at 33. Dr. Thompson recommended that Petitioner attend PT once a week for eight weeks. Id. at 37.

Just over one year after vaccination, on February 14, 2024, Petitioner saw nephrologist Daud Sheikh-Hamad, M.D., for a renal stone and microscopic hematuria (microscopic blood in the urine). Pet. Ex. 14 at 123. Dr. Sheikh-Hamad noted that Petitioner's workup was negative thus far. Id. at 125. He ordered additional laboratory studies. Id.

On February 15, 2024, Petitioner followed up with her PCP, Dr. Singh. Pet. Ex. 11 at 10. Petitioner reported that her joint pain had improved and that she was not experiencing any pain or hematuria from her renal stone. Id. Dr. Singh noted that Petitioner's left hip lipoma was no

longer visible on MRI. Id. Chronic right shoulder pain and polyarthralgia remained diagnoses. Id. at 18-19.

On March 29, 2024, Petitioner returned to Dr. Sheikh-Hamad regarding hematuria and received a prescription for iron supplements. Pet. Ex. 14 at 80, 84.

On April 11, 2024, Petitioner was seen by Savannah Bowman, M.D., (a rheumatology fellow) at Rheumatology Clinic SC for her polyarthralgia. Pet. Ex. 14 at 18. Petitioner reported that her nephrologist advised her to stop taking NSAIDs, and that her hematuria had since improved. Id. at 20. Petitioner also reported that she had finished 36 sessions of PT which "did help her hips and shoulders some" but "she [was] still in a lot of pain, mostly in bilateral shoulders." Id. Petitioner also had stiffness in her shoulders that was worse in the mornings and lasted most of the day. Id. On examination, Petitioner had "significant tenderness and decreased ROM bilaterally" of her shoulders. Id. at 22. Dr. Bowman reviewed Petitioner's left hip MRI and noted scattered tendinosis of several tendons, indicating a potential systemic inflammatory process. Id. at 23. Dr. Bowman's assessment was "concerned for PMR" but noted spondyloarthropathy was "also a consideration." Id. at 23.

A visit addendum from the attending rheumatologist, Shalini Jha, M.D., agreed with Dr. Bowman's assessment. Pet. Ex. 14 at 14. Dr. Jha noted Petitioner had "severe pain in shoulders and hips with very limited ROM and prolonged morning stiffness" with "significant pain with ROM of shoulders, only able to lift 90 degrees" on examination. Id. Dr. Jha agreed with Dr. Bowman's assessment that Petitioner "likely" had PMR. Id. He recommended Petitioner begin prednisone and suggested additional testing. Id.

No updated medical records have been filed.

## II. LEGAL STANDARDS

### A. Standards for Adjudication

The Vaccine Act was established to compensate vaccine-related injuries and deaths. § 10(a). "Congress designed the Vaccine Program to supplement the state law civil tort system as a simple, fair and expeditious means for compensating vaccine-related injured persons. The Program was established to award 'vaccine-injured persons quickly, easily, and with certainty and generosity.'" Rooks v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 1, 7 (1996) (quoting H.R. Rep. No. 908 at 3, reprinted in 1986 U.S.C.C.A.N. at 6287, 6344).

To receive compensation through the Program, Petitioner must prove either (1) that she suffered a "Table Injury"—i.e., an injury listed on the Vaccine Injury Table—corresponding to a vaccine that she received, or (2) that she suffered an injury that was actually caused by a vaccination. See §§ 11(c)(1), 13(a)(1)(A); Capizzano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1319-20 (Fed. Cir. 2006). Here, Petitioner primarily seeks to establish a Table claim, and she therefore must make a factual showing sufficient to meet the Table's relevant definitions, as set forth in the Table's Qualifications and Aids to Interpretation ("QAI"). § 14(b).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. Id. at § 100.3(a)(I)(C). The Vaccine Table's QAIs establish criteria to be met for SIRVA. Id. at § 100.3(c)(10).

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation[,] or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
> (ii) Pain occurs within the specified time-frame;
> (iii) Pain and reduced [ROM] are limited to the shoulder in which the intramuscular vaccine was administered; and
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

Id. (emphasis omitted). Petitioner's burden of proof is by a preponderance of the evidence. § 13(a)(1).

### B. Factual Issues

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. § 13(a)(1)(A). To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. See Burns v. Sec'y of Health & Hum. Servs., 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records).

Contemporaneous medical records, "in general, warrant consideration as trustworthy evidence." Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). But see Kirby v. Sec'y of Health & Hum. Servs., 997 F.3d 1378, 1382 (Fed. Cir. 2021) (rejecting the presumption that "medical records are accurate and complete as to all the patient's physical conditions"); Shapiro v. Sec'y of Health & Hum. Servs., 101 Fed. Cl. 532, 538 (2011) ("[T]he absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance." (quoting Murphy v. Sec'y of Health & Hum. Servs., 23 Cl. Ct. 726, 733 (1991), aff'd per curiam, 968 F.2d 1226 (Fed. Cir. 1992))), recons. den'd after remand, 105 Fed. Cl. 353 (2012), aff'd mem., 503 F. App'x 952 (Fed. Cir. 2013). The weight afforded to contemporaneous records is due to the fact that they "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra

premium." Id. To overcome the presumptive accuracy of medical records, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." Sanchez v. Sec'y of Health & Hum. Servs., No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing Blutstein v. Sec'y of Health & Hum. Servs., No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)), mot. for rev. den'd, 142 Fed. Cl. 247 (2019), vacated on other grounds & remanded, 809 F. App'x 843 (Fed Cir. 2020).

Despite the weight afforded to medical records, special masters are not rigidly bound by those records. Valenzuela v. Sec'y of Health & Hum. Servs., No. 90-1002V, 1991 WL 182241, at *3 (Fed. Cl. Spec. Mstr. Aug. 30, 1991); see also Eng v. Sec'y of Health & Hum. Servs., No. 90-1754V, 1994 WL 67704, at *3 (Fed. Cl. Spec. Mstr. Feb. 18, 1994) (noting Section 13(b)(2) "must be construed so as to give effect also to § 13(b)(1) which directs the special master or court to consider the medical records (reports, diagnosis, conclusions, medical judgment, test reports, etc.), but does not require the special master or court to be bound by them").

## III. ANALYSIS

For a petitioner to succeed on a Table SIRVA claim, she must satisfy all four QAI criteria. The undersigned makes no findings as to the first or second QAI criteria. Further, she makes no findings as to the site of vaccination.[7] However, even assuming Petitioner received her vaccination in her right deltoid, Petitioner cannot satisfy the third and fourth QAI criteria. Thus, Petitioner cannot establish a Table SIRVA claim.

### A. QAI Criterion Three: Scope of Pain and Limited Range of Motion

The third QAI criterion requires that "[p]ain and reduced [ROM] are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3 (c)(10)(iii). This requirement encompasses an affirmative showing that the petitioner's presentation included a reduction in range of motion. Bolick v. Sec'y of Health & Human Servs., No. 20-893V, 2023 WL 8187307, at *6-8 (Fed. Cl. Spec. Mstr. Oct. 19, 2023). Otherwise, the third SIRVA criterion focuses on whether "the condition is localized to the shoulder." Chu v. Sec'y of Health & Human Servs., 180 Fed. Cl. 37, 74 (2026) (citing 82 Fed. Reg. 6294, 6296); see also Grossman v. Sec'y of Health & Human Servs., No. 18-00013V, 2022 WL 779666, at *16 (Fed. Cl. Spec. Mstr. Feb. 15, 2022) (finding the third SIRVA criterion met where "the evidence does not preponderate in favor of any finding that petitioner had diagnostically meaningful complaints of pain or reduced range of motion beyond her left shoulder."). Symptoms of pain or reduced ROM outside of the affected shoulder are significant "only if they reflect 'patterns of pain or reduced range of motion indicative of a contributing etiology beyond the confines of a musculoskeletal injury to the affected shoulder,' i.e., that the symptoms at issue constitute evidence that the condition at issue is not localized to the shoulder." Robinson v. Sec'y of Health & Hum. Servs.,

[7] While the VAR indicates Petitioner received a flu vaccine in her left deltoid, Petitioner maintains that she received the flu vaccination in her right deltoid. See Pet. Ex. 1 at 4; Petition ¶¶ 1, 3; Pet. Ex. 15 ¶¶ 2-3. For purposes of this Ruling, the undersigned presumes that Petitioner received the flu vaccination in her right deltoid, as she asserts.

No. 21-507V, 2026 WL 890615, at *11 (Fed. Cl. Spec. Mstr. Feb. 24, 2026) (quoting Grossman, 2022 WL 779666, at *15).

Here, while there is evidence of a reduction in range of motion, Petitioner's condition is not localized to her right shoulder. Instead, Petitioner had significant symptoms outside the affected right shoulder. For example, on July22, 2023, Petitioner complained of intermittent headaches since her vaccination and right-sided facial pain. Beginning in August 2023, Petitioner reported pain in both her right shoulder and bilaterally in her hips, knees, and groin that she related back to early July. By October 2023, she also complained of bilateral shoulder pain. An April 11, 2024 examination showed reduced shoulder ROM bilaterally. See, e.g., Pet. Ex. 14 at 22, 24 ("significant tenderness and decreased ROM bilaterally"). As discussed below, these symptoms—particularly her symptoms of bilateral pain in the shoulders, hips, and knees—are indicative of contributing etiology beyond the confines of a musculoskeletal injury to the affected shoulder.

Because Petitioner's symptoms were not localized to her shoulder, she cannot preponderantly establish the third QAI criterion of a Table SIRVA claim.

### B. QAI Criterion Four: Other Condition or Abnormality

The fourth QAI criterion requires that "[n]o other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy)." 42 C.F.R. § 100.3 (c)(10)(iv). A petitioner will fail to satisfy the fourth QAI criterion if there is preponderant evidence of a condition that would explain the petitioner's current symptoms. See id. The condition or abnormality must qualify as an explanation for the symptoms a petitioner is experiencing, but need not be a better or more likely explanation. Durham v. Sec'y of Health & Hum Servs., No. 17-1899V, 2023 WL 3196229, at *13-14 (Fed. Cl. Spec. Mstr. Apr. 7, 2023). "In effect . . . this Table element does not impose on Respondent the obligation to prove an 'alternative cause' for the injury, but instead merely that the record contains sufficient evidence of a competing explanation to 'muddy' a finding that vaccine administration was the cause." Miller v. Sec'y of Health & Hum. Servs., No. 20-0531V, 2024 WL 3699521, at *7 (Fed. Cl. Spec. Mstr. July 8, 2024).

On August 2, 2023, Petitioner report right shoulder pain and tenderness in her shoulder and hips. Two weeks later, on August 14, 2023, Petitioner was diagnosed with polyarthralgia by her treating rheumatologist, Dr. Poulose. Her symptoms included right shoulder pain as well as pain in the groin, knees, and hips. She had elevated inflammatory markers and was prescribed methotrexate. These visits may suggest a unifying systemic diagnosis that explain both Petitioner's shoulder and other joint pain.

Later visits to both her PCP and other rheumatologists also suggest a unifying diagnosis. For example, on October 30, 2023, Petitioner reported to her PCP that she experienced right shoulder pain after vaccination, and "shortly after the shoulder pain[,] she started having pain in both shoulders, groin, hips, [and] knees." Pet. Ex. 11 at 167. PT records note that while Petitioner initially experienced right shoulder pain, she developed bilateral shoulder pain as well

as bilateral hip and knee pain. An assessment by a second rheumatologist, Dr. Suh, noted bilateral tenderness in both shoulders and he suggested a differential diagnosis of various arthritic and rheumatological conditions, including polyarthralgia and PMR. Finally, on April 11, 2024, two rheumatologists noted Petitioner had "significant tenderness and decreased ROM bilaterally" of her shoulders, an MRI with findings of a systemic inflammatory process, and assessed her with likely PMR.

The undersigned cannot conclude that that Dr. Poulose's August 14, 2023 polyarthralgia diagnosis is unrelated to Petitioner's alleged shoulder injury.[8] Rather, the undersigned finds the medical records demonstrate Petitioner experienced a systemic illness that included right shoulder pain as well as bilateral shoulder pain and bilateral hip and knee pain. Accordingly, Petitioner cannot satisfy the fourth QAI criterion as there is preponderant evidence that another condition may explain Petitioner's symptoms.

## IV. CONCLUSION

For the reasons discussed above, the undersigned finds that Petitioner has failed to demonstrate the Table requirements for SIRVA (42 C.F.R. § 100.3(c)(10)), and hereby dismisses Petitioner's Table SIRVA claim.

While the record does not support a Table SIRVA claim, Petitioner may file an amended petition and proceed with a causation-in-fact claim. A separate order will issue addressing next steps in this case.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master

[8] Should Petitioner proceed with a causation-in-fact claim, expert opinions would be needed to address this issue.